**WICKLAND OIL TERMINALS,**
**Plaintiff,**

v.

**ASARCO, INC., and State Lands Commission of California, Defendants.**

**No. C–83–5906 SC.**

United States District Court,
N.D. California.

May 4, 1984.

Joseph A. Darrell, James C. Collins, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., Daniel E. Hall, Sacramento, Cal., for plaintiff.

Randy M. Mott, C. MacNeil Nitchell, Tracy M. Getz, Breed, Abbott & Morgan, Washington, D.C., Charles F. Preuss, John A. Anderson, Bronson, Bronson & McKinnon, San Francisco, Cal., for Asarco, Inc.

## ORDER RE ASARCO'S MOTION TO DISMISS CERCLA CLAIMS

CONTI, District Judge.

Plaintiff Wickland Oil Terminals ("Wickland") brings this action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9657, and state law seeking declaratory relief, damages and injunctive relief against defendants Asarco, Inc. ("Asarco") and State Lands Commission of California ("Commission") with respect to the disposal of allegedly hazardous wastes located on property owned and leased by plaintiff.

More specifically, plaintiff, in its federal claims, seeks: (1) a declaration that Asarco is, as between plaintiff and Asarco, "solely

and entirely liable under the pertinent provisions of [CERCLA] for any existence of a release or threatened release of hazardous substances into the environment at the Selby facility now owned and leased by Wickland"; (2) a similar declaration against the Commission; (3) an order enjoining Asarco "to initiate clean-up of the slag abandoned by Asarco at the Selby site, to coordinate said clean-up with the appropriate federal and state agencies in a manner consistent with the National Contingency Plan, and to bear the costs of said clean-up"; and (4) reimbursement from Asarco for alleged costs in the amount of $150,000 incurred by plaintiff in testing the slag and the environment contiguous to the slag for migration of hazardous substances.

The matter is currently before the court on Asarco's motion to dismiss plaintiff's first, second,[1] third and fourth causes of action.

### Factual Background [2]

From approximately 1886 through 1970, Asarco conducted smelting operations for the extraction of lead, zinc and other metals on two contiguous parcels of land in Contra Costa County. Asarco owned one parcel in fee simple and occupied the other parcel under license from Contra Costa County. In 1951, the State of California became the owner of the licensed parcel and placed it under the custodianship of the Commission, which issued a lease to Asarco. Collectively, these two parcels are known as the "Selby site."

On October 25, 1977, Wickland purchased from Asarco the parcel owned in fee. The Commission issued a lease to Wickland for the state-owned parcel on July 17, 1981. Accordingly, Wickland now occupies the Selby site.

Asarco's smelting operations produced smelting slag, a rock-like material, which was deposited at the site. Up to 1,000,000 metric tons were allegedly deposited above the surface of the site, and an unascertained amount was deposited below the surface. The slag currently remains on the site in the form of two stockpiles, in addition to that located below the surface.

In early 1980, Wickland was preparing the site for commercial redevelopment. As part of the redevelopment plan, Wickland desired to relocate the slag, either offsite or elsewhere on the site. Consequently, it proposed to the U.S. Army Corps of Engineers ("Corps") that the slag be used as fill material for levees on the nearby Sacramento River Delta, which had been damaged by heavy rains.

On April 21, 1980, the California Department of Fish and Game ("DOFG") informed the Corps by letter that deposit of the slag in the levees would violate the California Fish and Game Code due to the presence of heavy metals in the slag. On July 16, 1980, the California Department of Health Services ("DOHS") advised the Corps by letter that the slag contained hazardous waste and posed a serious threat to the public health and environment if not properly managed. A copy of this letter was received by Wickland on or about July 29, 1980. Wickland alleges that receipt of the letter marked the first instance where the slag was characterized as hazardous waste by any state or federal regulatory agency. On July 21, 1980, DOHS informed Wickland directly that the slag was hazardous waste and directed Wickland "not [to] excavate, remove or recover the slag waste without written approval from this Department."

On August 13, 1980, DOHS issued a press release confirming its position that the slag at the Selby site contained hazardous waste. On October 3, 1980, DOHS advised Wickland by letter that a study conducted by the Hazardous Materials Management Section of DOHS indicated that the Selby site contained hazardous

---

**1.** Plaintiff's second cause of action seeks declaratory relief against the Commission only, which has not joined in Asarco's motion. Accordingly, the motion must be denied with respect to the second cause of action.

**2.** Summarized from the allegations of the complaint, which must be accepted as true for purposes of this motion.

waste warranting further DOHS investigation. Attached to the letter was a page from an interim DOHS report on hazardous waste disposal sites in California, which stated in part:

As the current owners, Wickland Oil will be responsible for clean-up measures on their property. However, this site is unique because a large portion of the slag is tidal land and is the property of the State Lands Commission. We are working with both groups on clean-up of this site.

On October 7, 1980, DOHS issued a press release identifying the Selby site as a hazardous waste dump.

Subsequent to the October 7, 1980, press release, Wickland developed a procedure, in conjunction with DOHS, DOFG and the California Regional Water Quality Board, to test groundwater concentrations of heavy metals at the site. Wickland bore the expense of conducting these tests. In addition, in the summer and fall of 1981, Wickland organized a task force to evaluate the hazard posed by the slag in an alleged attempt to conform to DOHS's July 21, 1980, directive and to facilitate the commercial redevelopment of the site. The task force included Wickland personnel and personnel from DOHS, other state agencies, and the U.S. Corps of Engineers.

In December, 1981, DOHS mandated further testing as a precondition to the commercial redevelopment of the site because the test results up to that point proved inconclusive. At about the same time, Wickland abandoned its plans to redevelop the site because market conditions and the problems associated with the slag rendered the project not economically feasible. Consequently, the task force was dissolved and further testing halted. In January of 1983, DOHS issued a report ranking the Selby site twenty-first in order of priority of hazardous waste sites in California. The Selby site allegedly remains on the priority list as revised by DOHS in January, 1984.

3. *See,* Office of Emergency and Remedial Response, U.S. Environmental Protection Agency, *Guidance—Cooperative Agreements and Con-*

*Discussion*

■ A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Rae v. Union Bank,* 725 F.2d 478, 479 (9th Cir. 1984).

### A. Declaratory Relief under CERCLA: First Cause of Action

■ Asarco moves to dismiss the first cause of action on the ground that it is not ripe for adjudication. In making the determination whether a claim for declaratory relief is ripe, a court must consider whether the case represents "a real controversy between parties having adverse legal interest of such immediacy and reality as to warrant a declaratory judgment." *State ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300, 1316 (N.D. Ohio 1983).

Asarco contends that Wickland's claim for declaratory relief is unripe for two principal reasons: (1) DOHS is not an enforcement arm of the United States Environmental Protection Agency ("EPA") under CERCLA with respect to the Selby site and hence no CERCLA enforcement action has commenced; and (2) even if DOHS is authorized to undertake CERCLA enforcement proceedings at the Selby site, the actions taken by DOHS thus far do not constitute CERCLA enforcement measures.

Wickland responds to Ascarco's first argument by asserting that DOHS is the designated enforcement agency for California's CERCLA cooperative agreement with the United States under section 104(d)(1) and has taken the enforcement initiative at the Selby site since 1980.

■ Asarco correctly points out, however, that CERCLA cooperative agreements under section 104(d)(1) refer to specific sites and are not generic in nature.[3]

*tracts with States Under the Comprehensive Environmental Response, Compensation, and Lia-*

There is no allegation that a cooperative agreement between DOHS and EPA has been entered into with respect to the Selby site. Absent such a cooperative agreement, no nexus exists between the actions of DOHS with respect to the Selby site and CERCLA. Consequently, the actions of DOHS cannot be considered CERCLA enforcement actions.

■ The court further concludes that the DOHS actions taken with respect to Wickland, even if CERCLA-directed, do not rise to the level of enforcement measures creating adverse legal interests "of such immediacy and reality" as to warrant declaratory relief.

In support of its contention that a real controversy exists at present, Wickland notes that the Selby site has been placed on the DOHS hazardous waste site list, that Wickland has been directed not to remove the slag from the site without DOHS approval, that Wickland has expended funds to test the slag and that the DOHS interim report stated that Wickland will be responsible for clean-up measures at the site. Wickland asserts that the last factor clearly distinguishes Wickland's situation from that in *D'Imperio v. United States*, 575 F.Supp. 248, 20 E.R.C. 1090 (D.N.J.1983), where the court dismissed a private party's declaratory judgment action on ripeness grounds because an EPA "demand" letter to the plaintiff stated that the plaintiff "may" be liable and did not require any action from the plaintiff.

■ It is clear to the court that mere placement on the DOHS hazardous waste site list is insufficient to create a live controversy. Such placement does not assure that DOHS will undertake enforcement action. The second and third factors relied upon by Wickland also do not support the existence of a live controversy in these circumstances. A review of the complaint reveals that the DOHS prohibition against moving the slag without prior approval and the expenditure of funds to test the slag arose out of Wickland's proposal to redevelop the site. At present, Wickland has abandoned all redevelopment plans. The task force assembled by Wickland has been dissolved. Absent redevelopment plans, the DOHS directive and the testing of the slag lose significance. Simply put, there is no indication that DOHS will require Wickland to take any action if the slag remains in its present location. The final factor Wickland relies on—the interim DOHS report—similarly fails to give rise to a live controversy. The bald statement that Wickland will be liable for clean-up costs in the interim report does not provide any assurance that DOHS will pursue enforcement measures at the Selby site. Accordingly, Wickland's first cause of action for declaratory relief must be dismissed.

## B. *Injunctive Relief: Third Cause of Action*

Wickland's request for injunctive relief is "not predicated on an express private right of action within CERCLA itself but rather on 'the inherent power of the court to give effect to its own judgment ... and the Declaratory Judgment Act' " (citation omitted).[4] Moreover, "Wickland agrees that the declaratory judgment sought in the First Cause of action is a necessary condition for further relief based thereon ...."[5] Given the court's dismissal of the first cause of action, the third cause of action must be dismissed as well.

## C. *Damages: Fourth Cause of Action*

Wickland seeks damages under section 107(a)(4)(B) of CERCLA in the amount of approximately $150,000 for costs incurred by Wickland in testing the Selby site for groundwater concentrations of hazardous substances. Section 107, 42 U.S.C. section 9607, provides, in relevant part:

*bility Act of 1980* (P.L. 96–510) (March 1982) at iv.

**4.** Plaintiff Wickland Oil Terminals' Memorandum of Points And Authorities In Opposition to Defendant Asarco's Motion To Dismiss Plaintiff's CERCLA Claims at 28.

**5.** *Id.*

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ... from which there is a release or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—...

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

. . . .

Asarco moves to dismiss the claim for damages on ripeness grounds. Asarco's fundamental argument in support of this motion is that private actions for reimbursement of response costs under CERCLA may be maintained only after a governmental remedial program has been prescribed and cleanup commenced. Asarco thus concedes that the costs incurred by Wickland may ripen into "response" costs within the meaning of § 107(a)(4)(B),[6] but only after the appropriate governmental entity has authorized a cleanup program. In effect, Asarco characterizes Wickland's costs prior to the commencement of an authorized cleanup program as non-recoverable "investigatory" costs.

■ The court concurs with Asarco's view that an authorized governmental cleanup program, initiated by the EPA or by state authorities pursuant to a cooperative agreement, must commence before a private party can state a claim for damages under CERCLA. The court finds that the allegations of the complaint do not substantiate a finding that such a cleanup program was ever commenced at the Selby site. Rather, DOHS allegedly required Wickland to conduct tests at the site to determine the nature and extent of any hazardous substances thereon if Wickland desired to pursue its plan to redevelop the site. Hence, the costs incurred by Wickland to conduct the tests may properly be characterized at present as costs of "development" rather than "response" costs as they were not incurred pursuant to an authorized CERCLA cleanup program.

In reaching its conclusions, the court first looks to the language of § 107, which provides, in part, that a party found liable "shall be liable for:

(A) all costs of removal or remedial action incurred by the United States government or a state not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

. . . .

The words "any *other* necessary costs" can be read to require that some governmental response costs be incurred before a private party may seek reimbursement of its costs. Given the ambiguity of the language, however, the court also relies upon the intent of the framework of response powers articulated in CERCLA and the National Contingency Plan ("NCP") which form the basis for subjecting a responsible party to liability.

The NCP, codified at 40 C.F.R. §§ 300 *et seq.*, applies to all federal agencies and "is to effectuate the response powers and responsibilities created by [CERCLA]." 40 C.F.R. §§ 300.3(a), 300.1. These response powers are provided for in § 104 of CERCLA:

Whenever (a) any hazardous substance is released or there is a substantial threat of such release into the environment ... the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of and provide for remedial action relating to such hazardous substance ... unless the President determines that such removal or remedial action will be done properly by the owner or operator of the vessel or facility from which the

---

**6.** *See, e.g., United States v. Wade,* 546 F.Supp. 785–787 n. 4 (E.D.Pa.1983); *United States v.*

*NEPACCO,* 579 F.Supp. 823, 833 (W.D.Mo.1984).

release or threatened release emanates, or by any other responsible party.

42 U.S.C. § 9604(a). The costs of response incurred by the government under § 104 are financed initially by the Hazardous Substance Response Trust Fund ("Superfund") established by 42 U.S.C. § 9631. In addition, the NCP provides alternatives to Superfund-financed remedial action:

> (c) As an alternative or in addition to Fund-financed remedial action, the lead agency may seek, through voluntary agreement or administrative or judicial process, to have those persons responsible for the release clean up in a manner that effectively mitigates and minimizes damage to, and provides adequate protection of, public health, welfare, and the environment . . . .

40 C.F.R. § 300.68(c):

The response powers authorized by CERCLA and the NCP contemplate governmental supervision over, and initiation of, hazardous waste cleanup. For example, the President is authorized to pursue remedial action unless he determines that a private party will "properly" undertake such action. "Lead" agencies, either the EPA or state agencies pursuant to a cooperative agreement, may seek to have responsible parties undertake a cleanup. The thrust of the response provisions is to authorize governmentally initiated and supervised cleanup programs which place ultimate responsibility on the responsible parties.

Wickland has not been compelled to undertake a cleanup at the Selby site by EPA or DOHS pursuant to a site-specific cooperative agreement. Rather, Wickland pursued a plan to redevelop the site and pursuant to that plan was allegedly required to conduct certain tests. The court concludes that the costs incurred in conducting those tests do not rise to the level of "response" costs absent a governmentally authorized cleanup program. Consequently, Wickland's claim for damages must be dismissed as not ripe within the meaning of § 107 of CERCLA.

In accordance with the foregoing, it is hereby ordered that:

(1) Asarco's motion to dismiss the first, third and fourth causes of action is granted;

(2) Asarco's motion to dismiss the second cause of action is denied.