**WICKLAND OIL TERMINALS, a California corporation, Plaintiff-Appellant,**

**v.**

**ASARCO, INC., a New Jersey corporation, and State Lands Commission of California, Defendants-Appellees.**

**No. 85–1962.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1986.

Decided June 20, 1986.

---

Joseph A. Darrell, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiff-appellant.

C. MacNeil Mitchell, Breed, Abbott & Morgan, New York City, and Ellyn S. Levinson, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.

Before WALLACE, KENNEDY, and FARRIS, Circuit Judges.

WALLACE, Circuit Judge:

Wickland Oil Terminals (Wickland) appeals from a judgment dismissing its claims for damages and for declaratory and injunctive relief against Asarco, Inc. (Asarco) for failure to state a claim upon which relief could be granted. The central question on appeal is whether a governmentally authorized cleanup program is a prerequisite to a private action under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607(a). Wickland also appeals from a judgment in favor of the State Lands Commission of California (the Commission) on Wickland's claim for declaratory relief. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the dismissal of Wickland's claims against Asarco and remand the case, and

we dismiss Wickland's appeal against the Commission for lack of jurisdiction.

## I

Wickland's complaint advises us that from approximately 1886 through 1970, Asarco conducted smelting operations for the extraction of lead, zinc, and other metals on two contiguous parcels of land in Selby, California (the Selby site). Asarco owned one of the parcels. It occupied the other parcel under license until 1951, when the State of California became owner of the parcel; thereafter, Asarco leased the parcel from the Commission, which acted as custodian for the State of California. Wickland alleges that in the course of Asarco's smelting operations, Asarco deposited up to one million metric tons of smelter slag above the surface of the Selby site, and deposited an unascertained amount of slag below the surface. The slag remains on the Selby site.

Wickland purchased the parcel owned by Asarco in 1977. Wickland alleges that in April 1980 it learned for the first time that the slag abandoned by Asarco on the Selby site might contain hazardous concentrations of various metals. In July 1980, the California Department of Health Services (the Health Department) informed Wickland that the slag constituted a potentially serious environmental hazard and ordered Wickland "not [to] excavate, remove or recover the slag waste without written approval" from the Health Department. In October 1980, the Health Department notified Wickland that a Health Department study indicated that the Selby site contained hazardous waste; it further advised Wickland that Wickland was responsible for cleanup measures on the Selby site. Working with the Health Department and other state agencies, Wickland then developed and conducted testing on the Selby site of the groundwater concentrations of heavy metals and of the migration of slag particles.

In July 1981, Wickland leased the second parcel from the Commission. In the summer and fall of 1981, Wickland assembled a task force consisting of personnel from Wickland, the Health Department, and other state and federal bodies to conduct tests to evaluate the hazard posed by the slag. In December 1981, the Health Department and other state agencies mandated additional testing of the slag as a precondition to further commercial redevelopment of the Selby site by Wickland. By early 1982, Wickland had expended approximately $150,000 on slag testing required by state agencies. In January 1983, the Selby site ranked 21st on the Health Department's Priority Ranking of Hazardous Waste Sites. *See generally* 42 U.S.C. § 9605(8)(B).

Wickland brought suit in district court against Asarco and the Commission under CERCLA, 42 U.S.C. §§ 9601–9657. Wickland brought three federal claims against Asarco: it sought damages under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for testing costs incurred; it requested a declaration that, as between Wickland and Asarco, Asarco was solely and entirely liable under CERCLA for any release of hazardous substances on the Selby site; and it asked for an order requiring Asarco to initiate cleanup of the Selby site. Wickland also sought a declaration that the Commission was liable under CERCLA for any release of hazardous substances on the Selby site.

On Asarco's motion, the district court dismissed Wickland's three claims against Asarco for failure to state a claim upon which relief could be granted. *Wickland Oil Terminals v. Asarco, Inc.*, 590 F.Supp. 72 (N.D.Ca.1984) (*Wickland*). Wickland then voluntarily dismissed its claim against the Commission. The district court entered final judgments in favor of both defendants.

## II

We review de novo the district court's dismissal of Wickland's three claims against Asarco for failure to state a claim upon which relief could be granted. *Guillory v. County of Orange*, 731 F.2d 1379, 1381 (9th Cir.1984). We must accept all

material allegations in the complaint as true and construe them in the light most favorable to Wickland. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 580 (9th Cir.1983). We cannot uphold the dismissal unless it appears to a certainty that Wickland would be entitled to no relief under any state of facts that could be proved. *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1309 (9th Cir.1982).

### A.

Wickland pleaded a claim for damages against Asarco pursuant to section 107(a)(2)(B) of CERCLA, 42 U.S.C. § 9607(a)(2)(B), for approximately $150,000 in costs incurred in testing the Selby site for hazardous substances. The district court ruled that "an authorized governmental cleanup program, initiated by the EPA or by state authorities pursuant to a cooperative agreement, must commence before a private party can state a claim for damages under CERCLA." *Wickland*, 590 F.Supp. at 77. Determining that Wickland had not alleged satisfaction of this prerequisite, the district court dismissed the damages claim. *Id.* at 77–78.

Congress enacted CERCLA in 1980 to provide a comprehensive response to the problem of hazardous substance release. CERCLA implements this plan through an array of mechanisms. Section 105 of CERCLA authorizes the President to incorporate into the national contingency plan "procedures and standards for responding to releases of hazardous substances." 42 U.S.C. § 9605. Section 221 establishes the Hazardous Substance Response Trust Fund, popularly known as Superfund. 42 U.S.C. § 9631. Superfund monies finance response measures by the federal government that are consistent with the national contingency plan. CERCLA §§ 104, 111(a)(1), 42 U.S.C. §§ 9604, 9611(a)(1). They also finance private response costs that are approved under the national contingency plan and are federally certified. CERCLA § 111(a)(2), 42 U.S.C. § 9611(a)(2). In addition, under section 106

the federal government may seek judicial relief from the actual or threatened release of a hazardous substance. 42 U.S.C. § 9606. Section 107(a)(1–4)(A) makes certain parties responsible for the presence of hazardous substances liable to federal and state governments for response costs. 42 U.S.C. § 9607(a)(1–4)(A). Similarly, section 107(a)(1–4)(B) makes responsible parties liable to private persons for response costs. 42 U.S.C. § 9607(a)(1–4)(B).

Section 107(a) of CERCLA is the focal point of our inquiry. This section states in part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, ... shall be liable for—
>
> > (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan; [and]
> >
> > (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan....

42 U.S.C. § 9607(a)(2)(A), (B).

Section 107(a)(2)(B) expressly creates a private cause of action for damages. *See Walls v. Waste Resource Corp.*, 761 F.2d 311, 318 (6th Cir.1985) (*Walls*). We must address whether the district court correctly determined that a governmentally authorized cleanup program is a precondition to maintaining this private cause of action.

Asarco makes two basic arguments in support of the district court's ruling. Its first argument rests on the phrase "*other* necessary costs of response*" (emphasis added) in section 107(a)(2)(B). Asarco asserts that when sections 107(a)(2)(A) and 107(a)(2)(B) are read together, the word "other" in subsection (B) indicates that the incurrence of governmental response costs under subsection (A) is a prerequisite to

the recovery of "other" response costs incurred by a private party. Asarco contends this interpretation is necessary so that the word "other" does not become surplus.

■ We see no basis for grafting on this ordinary word the critical role suggested for it by Asarco. We conclude that Asarco's interpretation is not correct and that the word "other" has an alternative, more plausible purpose. The word "other" in section 107(a)(2)(B) reasonably functions to distinguish between government response costs in subsection (A) and private response costs in subsection (B). Our interpretation is consistent with a broader view of the statute which demonstrates that Congress in CERCLA was able to impose a clear prerequisite of government approval on private recovery when it intended to do so. *See* CERCLA § 111(a)(2), 42 U.S.C. § 9611(a)(2).

Second, Asarco argues that in order to incur costs "consistent with the national contingency plan," a private party must act pursuant to a governmentally authorized cleanup program. In order to address Asarco's argument, we must first discuss the national contingency plan in effect at the time Wickland allegedly incurred response costs. Pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, and Executive Order No. 12,316, 46 Fed.Reg. 42,237 (1981), the Environmental Protection Agency (EPA) issued in 1982 the National Oil and Hazardous Substances Pollution Contingency Plan (the 1982 national contingency plan), 40 C.F.R. §§ 300.1–.86 (1985).[1] One subpart of the 1982 national contingency plan addresses hazardous substance response. *See* 40 C.F.R. §§ 300.61–.71 (1985). This subpart "establishes methods and criteria for determining the appropriate extent of response authorized by CERCLA when any hazardous substance is released." 40 C.F.R. § 300.61(a) (1985). It outlines the role that the "lead agency" (generally the EPA or a state agency oper-

ating pursuant to a contract or cooperative agreement executed under CERCLA, 40 C.F.R. § 300.6 (1985)) is to play in the successive phases of response. Asarco relies on various of these references to the role of the lead agency to argue that a private party may incur response costs pursuant to the section 107(a)(2)(B) requirement that they be "consistent with the national contingency plan" only if it acts pursuant to a cleanup program that has been authorized by a lead agency.

Whether consistency with the 1982 national contingency plan requires that a private party obtain prior lead agency approval of a cleanup program is not easily discerned from the provisions of the 1982 national contingency plan. On one hand, several provisions delineate a prominent role for the lead agency in the formulation of responses to releases of hazardous wastes. Section 300.68(d)(1), for example, states that the "lead agency ... will examine available information and determine ... the type or types of remedial response that may be needed to remedy the release." 40 C.F.R. § 300.68(d)(1) (1985). On the other hand, these provisions possibly do not constrain private parties seeking to recover response costs incurred under section 107(a). Arguably, for example, section 107(a) does not require strict compliance with the national contingency plan; rather, response costs incurred by a private party may be "consistent with the national contingency plan" so long as the response measures promote the broader purposes of the plan.

Fortunately, we need not resolve this question in a vacuum. Since the time of the district court opinion, the EPA has on two occasions presented its interpretation of how the national contingency plan bears on this issue. We must accord very great deference to an agency's interpretation of its regulations. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (*Udall*); *Hawaiian Electric Co. v.*

---

1. The 1982 national contingency plan was revised effective February 18, 1986. *See* 50 Fed.

Reg. 47,912–79 (1985).

*United States EPA,* 723 F.2d 1440, 1447 (9th Cir.1984). An agency's interpretation of its regulations is " 'of controlling weight unless it is plainly erroneous or inconsistent with the regulation[s].' " *Udall,* 380 U.S. at 16–17, 85 S.Ct. at 801, *quoting Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

In the preamble to its proposed rule revising the 1982 national contingency plan, 50 Fed.Reg. 5862–83 (1985), the EPA stated that proposed revisions would "clarify" what a private party seeking to recover response costs under section 107 must do in order to act in a manner consistent with the national contingency plan. 50 Fed.Reg. 5870 (1985). These revisions would clarify that "the lead agency does *not* have to evaluate and approve a response action for those costs to be recovered from a responsible party pursuant to CERCLA section 107." *Id.* (emphasis in original). Because EPA states that these revisions would simply clarify—not alter—the requirements of the national contingency plan, we read this language in the preamble as an interpretation by the EPA that the 1982 national contingency plan does not impose on section 107(a) actions by private parties a prerequisite of lead agency approval of a cleanup program.

The preamble to the final rule revising the 1982 national contingency plan, 50 Fed. Reg. 47,912–50 (1985), confirms our reading. In this preamble, the EPA acknowledged "the widespread confusion and conflicting judicial interpretations of the issue" of what consistency with the national contingency plan requires in private actions under section 107(a). 50 Fed.Reg. 47,934 (1985). The EPA stated that the final rule "makes it absolutely clear that no Federal approval of any kind is a prerequisite to a cost recovery under section 107." *Id.* This language plainly reflects an EPA interpretation that the 1982 national contingency plan does not require lead agency approval of cleanup programs as a prerequisite to section 107(a) actions by private parties.

■ We certainly cannot say that this EPA interpretation is plainly erroneous or inconsistent with the 1982 national contingency plan. We may reasonably believe that the provisions in the 1982 national contingency plan delineating the role of the lead agency in approving cleanup programs were not intended to limit private parties suing under section 107(a) of CERCLA. This reading is buttressed by the lack of any procedure whereby a private party could seek to obtain prior governmental approval of a cleanup program. Furthermore, this reading, consistent with CERCLA's broad remedial purpose, promotes the effectiveness of private enforcement actions under section 107(a) as a remedy independent of governmental actions financed by Superfund. We therefore must conclude that the district court erred in ruling that an authorized governmental cleanup program was a prerequisite to Wickland's claim for damages under section 107(a) of CERCLA.

■ Asarco also suggests an alternative ground for the district court's dismissal of Wickland's damages claim. Asarco argues that Wickland's action under section 107(a) is not ripe since Wickland has alleged only investigatory costs and has not alleged incurrence of actual, on-site cleanup costs. The distinction that Asarco attempts to manufacture between investigatory costs and on-site cleanup costs is immaterial under section 107(a). Section 107(a)(2)(B) allows recovery of "costs of response," which includes the costs of "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." *See* CERCLA § 101(23), 42 U.S.C. § 9601(23); *see also* CERCLA § 101(25), 42 U.S.C. § 9601(25). We hold that the testing expenses alleged by Wickland fall within this definition. They are therefore recoverable under section 107(a)(2)(B).

We thus conclude that the district court erred in dismissing Wickland's damages claim against Asarco under section 107(a) of CERCLA.

### B.

Wickland also pleaded a claim for declaratory relief against Asarco pursuant to 28 U.S.C. § 2201. Wickland sought a declaration that, as between Wickland and Asarco, Asarco was solely and entirely liable under CERCLA for the existence of any hazardous substances on the Selby site. The district court ruled that Wickland's claim for declaratory relief was not ripe since no governmental enforcement actions under CERCLA had yet been taken against Wickland.

■ Jurisdiction to award declaratory relief exists only in "a case of actual controversy." 28 U.S.C. § 2201. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see Western Mining Council v. Watt*, 643 F.2d 618, 623–24 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). A case is ripe where the essential facts establishing the right to declaratory relief have already occurred. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Riehl v. Travelers Insurance Co.*, 772 F.2d 19, 22 (3d Cir.1985); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, at 585 (1983).

■ Here we find that Wickland's claim for declaratory relief is ripe. The essential fact establishing Wickland's right to declaratory relief—the alleged disposal of hazardous substances at the Selby site at the time Asarco owned and operated the smelting facility—has already occurred. The absence of government enforcement actions against Wickland under CERCLA does not render the controversy between Wickland and Asarco remote and hypothetical. *Cf. Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 944 (9th Cir.1981) (actual threat of litigation not necessary for declaratory judgment action to be justiciable). Therefore, we reverse the district court's dismissal of this claim.

### C.

Wickland also pleaded a claim for injunctive relief ordering Asarco to initiate cleanup of the Selby site in coordination with the appropriate federal and state agencies and in a manner consistent with the national contingency plan. Pursuant to 28 U.S.C. § 2202, Wickland predicated this request for relief on its claim for declaratory relief. The district court ruled that since it had dismissed Wickland's claim for declaratory relief, it also had to dismiss the claim for injunctive relief. Because we have held that the claim for declaratory relief should not have been dismissed, we reverse the dismissal of the claim for injunctive relief, and remand it for further consideration.

### III

■ Wickland sought a declaration that the Commission, as owner of a portion of the Selby site, was liable under CERCLA for the release of hazardous substances. After Wickland voluntarily dismissed this claim, the district court granted judgment for the Commission. Wickland may not appeal this voluntary dismissal because it is not an involuntary adverse judgment against it. *Seidman v. City of Beverly Hills*, 785 F.2d 1447, 1448 (9th Cir.1986) (*Seidman*); *see Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966 (9th Cir.1981). We therefore dismiss Wickland's appeal on this claim for lack of jurisdiction. *Seidman*, 785 F.2d at 1448.

REVERSED AND REMANDED IN PART; DISMISSED IN PART.