WICKLAND OIL TERMINALS, a
California Corporation, Plaintiff,

v.

ASARCO, INC. a New Jersey Corporation, and State Lands Commission
of California, Defendants.

No. C–83–5906 SC.

United States District Court,
N.D. California.

Feb. 5, 1987.

Thelen, Marrin, Johnson & Bridges, Joseph A. Darrell, San Francisco, Cal., for plaintiff.

Bronson, Bronson & McKinnon, San Francisco, Cal., Breed, Abbott & Morgan, Washington, D.C., for Asarco.

John K. Van De Kamp, Atty. Gen., Ellyn S. Levinson, San Francisco, Cal., for State of Cal.

## ORDER RE STATE LANDS' MOTION TO DISMISS COMPLAINT AND CROSS–CLAIM

CONTI, District Judge.

Plaintiff brings this action against defendants Asarco, Inc. ("Asarco") and State Lands Commission of California ("State Lands"). Plaintiff seeks to recover response costs pursuant to the Comprehensive Environmental Compensation Response and Liability Act of 1980 ("CERCLA") 42 U.S.C. § 9607(a), declaratory relief and indemnity.

Plaintiff contends that from approximately 1886 through 1970, Asarco conducted smelting operations on two contiguous parcels of land in Contra Costa County, California. Plaintiff states that Asarco owned one parcel in fee simple and licensed the use of the other parcel from Contra Costa County. Plaintiff alleges that in 1951 the State of California became the owner of the licensed parcel and placed it under the custodianship of State Lands. Plaintiff states that State Lands then issued a lease to Asarco. Collectively, these two parcels are known as the "Selby site".

Plaintiff contends that on October 25, 1977, it purchased from Asarco the parcel Asarco owned in fee. Plaintiff further contends that State Lands issued it a lease for the state-owned parcel on July 17, 1981. Accordingly, plaintiff now occupies the Selby site.

Plaintiff alleges that Asarco's smelting operations produced smelting slag, a rock like material. Plaintiff asserts that Asarco deposited more than 1,000,000 metric tons of slag above and below the surface of the Selby site. Plaintiff alleges that Asarco deposited the slag at the Selby site with the permission and encouragement of State Lands. In 1980, the California Department of Health Services ("DOHS") found that the slag contains hazardous wastes which pose a serious threat to the public health and environment. Later that year, the DOHS identified the Selby site as a hazardous waste dump and named the plaintiff as partially responsible for the site's clean-up.

Plaintiff originally filed this action in December 1983. Plaintiff's original complaint stated claims against Asarco for damages under CERCLA, declaratory and injunctive relief and against State Lands for declaratory relief. Prior to any responsive pleading, plaintiff filed its first amended complaint on January 23, 1984.

In February 1984, Asarco moved to dismiss plaintiff's federal claims against it on ripeness grounds. On May 4, 1984, this court granted Asarco's motion. *Wickland Oil Terminals v. Asarco, Inc.*, 590 F.Supp. 72 (N.D.Cal.1984). As a result, plaintiff voluntarily dismissed without prejudice its action against State Lands preparing to appeal this court's May 4, 1984 order. In April 1985, this court entered final judgment in favor of defendants. On April 29, 1985, plaintiff filed a notice of appeal. On June 20, 1986, the Ninth Circuit reversed this court's May 4, 1984 order and remanded the action. The Ninth Circuit concluded that plaintiff's claims against Asarco were ripe for adjudication. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887 (9th Cir.1986).

On October 23, 1986, this court granted plaintiff leave to file its Second Amended Complaint. The Second Amended Complaint alleges three causes of action against both Asarco and State Lands. First, plaintiff seeks to recover response costs expended by plaintiff in connection with the hazardous wastes deposited at the Selby site. Plaintiff further seeks a declaratory judgment naming defendants solely responsible for all future costs necessary to combat and abate the release of hazardous wastes at this facility. Finally, plaintiff requests indemnity under California law.

Asarco has filed an answer to plaintiff's complaint and a counterclaim against plaintiff for recovery of response costs allegedly expended by Asarco. In addition, Asarco has filed a cross-claim against State Lands for indemnity and/or contribution "pursuant to CERCLA, federal common law, state common law, and otherwise." Asarco's Cross-Claim, ¶ 8.

The matter is presently before the court on State Lands' motions to dismiss plaintiff's Second Amended Complaint and Asarco's Cross-Claim. State Lands argues that plaintiff's and Asarco's federal claims are barred by the 11th Amendment. Furthermore, State Lands asserts that plaintiff's and Asarco's state claims are barred by the California claims statutes.

### Federal Claims Against State Lands

The 11th Amendment of the United States Constitution provides that

> The judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State.

The Supreme Court has interpreted the 11th Amendment as a grant of sovereign immunity to the States in federal court. Such immunity extends to actions instigated by the State's own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104, 104 S.Ct. 900, 910, 79 L.Ed.2d 67 (1984). However, this immunity is withdrawn in either of two situations: (1) when the state waives its 11th Amendment protection, or (2) when Congress enacts a statutory scheme which evidences an "unequivocal expression of congressional intent" to subject States to suit in federal court. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238–240, 105 S.Ct. 3142, 3145–3146, 87 L.Ed.2d 171, 177–178 (1985).

In the second situation, Congress can abrogate the 11th Amendment only when it exercises its authority under certain constitutional provisions. For instance, Congress can abolish the States' immunity when exercising its authority under § 5 of the 14th Amendment or the Commerce Clause. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *Parden v. Terminal R. of Alabama Docks Dept.,* 377 U.S. 184, 192–93, 84 S.Ct. 1207, 1212, 12 L.Ed.2d 233 (1964). In the present case, the court finds that Congress enacted CERCLA pursuant to its power under the Commerce Clause. *See Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.,* 452 U.S. 264, 282, 101 S.Ct. 2352, 2363, 69 L.Ed.2d 1 (1981) (power conferred by Commerce Clause broad enough to permit congressional regulation of activities causing air or water pollution or other environmental hazards). Therefore, Congress had the power to withdraw the States' 11th Amendment protection when enacting CERCLA.

Congress outlined CERCLA's liability scheme in 42 U.S.C. § 9607(a). 42 U.S.C. § 9607(a) provides that

> *any person* who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous wastes were disposed of, ... shall be liable for ... any other necessary costs of response incurred by any other person consistent with the national contingency plan....

42 U.S.C. § 9607(a) (emphasis added). CERCLA defines "person" as specifically including an "individual, firm corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, *State,* municipality, commission, *political subdivision of a State,* or any interstate body". 42 U.S.C. § 9601(21) (emphasis added). Moreover, CERCLA assigns "exclusive original jurisdiction" over § 9607(a) actions to the U.S. district court. 42 U.S.C. § 9613(b). If a statute's language is clear and unambiguous, and there is no "clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). No legislative history exists concerning Congress' intention to abrogate the States' 11th Amendment immunity under CERCLA. Thus, according to the statute, CERCLA expressly includes the States as potential defendants to response costs suits in federal court.

State Lands however asserts that the above provisions do not abolish its 11th

Amendment immunity from suits arising under CERCLA. For this assertion, State Lands relies upon the Supreme Court's opinion in *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In *Employees*, the Supreme Court held that by amending the Fair Labor Standards Act ("FLSA") to extend to state employees, Congress did not intend to deprive Missouri of its 11th Amendment immunity. *Id.*, at 285, 93 S.Ct. at 1618. State Lands argues that *Employees* stands for the proposition that the inclusion of "States" in the definitional section of a statute does not indicate sufficient congressional intent to permit a citizen to sue that state in federal court.

In *Employees*, the employees of state health facilities brought suit against Missouri seeking overtime compensation due them under the FLSA. At that time, the FLSA's liability section provided that *"any employer* who violates the provisions of ... this Act shall be liable to the employee or employees affected.... 29 U.S.C. § 216(b) (1938) (emphasis added). The original section defining "employer" expressly *excluded* States from the Act's coverage. 29 U.S.C. § 203(d) (1938). In 1966, Congress amended this definitional section to include States or their political subdivisions with respect to employees in a hospital, institution or school. 29 U.S.C. § 203(d) (1966). In view of the 1966 amendment, FLSA seemingly subjected States to suit along with other employers. However, since no corresponding change had been made to the liability section 216(b), the Supreme Court concluded it should not infer that Congress abrogated the States' immunity without also amending the relevant liability section. As the Court explained:

> [i]t would be surprising in the present case to infer that Congress deprived Missouri of her constitutional immunity without changing the old [section 2] 16b under which she could not be sued or indicating in some way by clear language that the constitutional immunity was swept away.

*Employees*, 411 U.S. at 285, 93 S.Ct. at 1618.

The court finds that State Lands attributes too broad a reading to *Employees*. In *Employees*, prior to 1966, clear statutory language existed indicating a congressional intent not to abolish the States' 11th Amendment immunity under FLSA. The 1966 amendment without a corresponding change in the FLSA's liability section created ambiguity concerning this congressional intent. The Supreme Court concluded that the 1966 amendment failed to override the previously expressed intent of preserving the States' 11th Amendment immunity. Thus, *Employees* does not stand for the proposition that the inclusion of "States" in the definitional section of a statute fails to indicate sufficient congressional intent to abrogate the states' 11th Amendment immunity. In fact, several Supreme Court decisions support the contrary proposition. *See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Rather, the *Employees* Court simply found that Congress must express its intent clearly not ambiguously.

Under CERCLA's § 9607(a), no ambiguity exists as to the intent of Congress regarding the States amenability to suit. CERCLA has always expressly declared that the State was a person for liability purposes under § 9607(a). *See* 42 U.S.C. §§ 9607(a), 9601(21). Congress has passed no previous or subsequent amendment creating ambiguity concerning this declaration. Therefore, the *Employees* Court's concerns over ambiguous congressional intent do not apply to § 9607(a) liability provision.

Regardless of the applicability of *Employees*, State Lands argues that "well-recognized rules of statutory construction" compel a finding that Congress did not intend to abolish 11th Amendment immunity under CERCLA. Under § 9607(a), the United States is defined as a "person" for liability purposes. 42 U.S.C. §§ 9607(a), 9601(21). The United States thus is subject

to suit under CERCLA. CERCLA's section 9607(g) though explicitly waives federal sovereign immunity. 42 U.S.C. § 9607(g) *amended* Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, § 120(a) (1986). State Lands contends that if § 9607(a) waives federal sovereign immunity, then § 9607(g) would be superfluous. Thus, State Lands argues that Congress must not have intended § 9607(a) to act as a general waiver of sovereign immunity.

The court rejects State Lands' argument. State Lands cites no legislative history for the weight it gives § 9607(g). At most, Congress was being redundant when it included a specific waiver of federal sovereign immunity. Such redundancy does not amount to congressional intent not to abolish the States' sovereign immunity under § 9607(a). Lastly, Congress' recent amendment to § 9607(g) specifically rejects State Lands' use of this provision to infer that Congress did not intend to abolish State immunity under § 9607(a). The amended federal sovereign immunity waiver states "[n]othing in this section shall be construed to affect the liability of any person or entity under sections 106 and 107 [i.e. sections 9606 and 9607]." SARA, Pub.L. No. 99–499, § 120(a) (1986).

Congress' recent amendments to CERCLA confirm its previous intention to abrogate the States' 11th Amendment immunity under § 9607(a). The Superfund Amendments and Reauthorization Act of 1986 ("SARA") amends CERCLA's definition of "owner or operator". *See* SARA, Pub.L. No. 99–499, § 101(b)(1) (1986). As previously stated, § 9607(a) holds liable *"any person* who at the time of disposal of any hazardous substance *owned or operated* any facility at which such hazardous wastes were disposed...." 42 U.S.C. § 9607(a) (emphasis added). SARA now adds a "State or Local Government Limitation" to CERCLA's definition of "owner or operator."

"(D) The term 'owner or operator' does not include a unit of State of local government which acquired ownership or control involuntarily through bankrupt-

cy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign. The exclusion provided under this paragraph shall not apply to any State or local government which has caused or contributed to the release or threatened release of hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this Act in the same manner and to the same extent, both proceduraly and substantively, as any nongovernmental entity, including liability under section 107 [i.e. 9607].

SARA, Pub.L. No. 99–499, § 101(b)(1) (1986).

This "Limitation" provides a narrow exception to the State's usual amenability to suit under section 9607(a). If the State acquires the facility "involuntarily" *and* has *not* "caused or contributed to the release or threatened release of hazardous substance," then the State shall not be liable under CERCLA. However, in all other circumstances, the State shall be consider an "owner or operator" subject to § 9607(a) liability to the same extent "as any nongovernmental entity".

State Lands argues that this amendment to "owner or operator" only indicates Congress' intent to abrogate a state's sovereign immunity in a very narrow case. State Lands contends that SARA's § 101(b)(1) abolishes the 11th Amendment only if the State acquires the facility involuntarily and causes or contributes to the release or threatened release of hazardous waste. Thus, State Lands asserts that in all other cases, such as where the State voluntarily acquires the facility, the 11th Amendment protects the State from suit. State Lands points out that such an interpretation does not leave CERCLA without force. State Lands argues that the federal government can enforce § 9607(a) against the States.

State Lands' argument defies commonsense. First, § 9607(a) does not limit re-

sponse actions to the federal government but names "individual[s]" and "corporation[s]" as potential plaintiffs. 42 U.S.C. §§ 9607(a), 9601(21). Second, when enacting SARA's § 101(b)(1), Congress titled the section "State or Local Government *Limitation.*" *See* SARA, Pub.L. No. 99–499, § 101(b)(1) (1986) (emphasis added). If the States had 11th Amendment immunity as State Lands argues, Congress would have no need to *limit* the definition of "owner or operator" in SARA. With 11th Amendment protection, the States would already be immunized from the involuntary transfer situation outlined in SARA's § 101(b)(1). Lastly, State Lands' argument leaves the State with greater protection for more culpable conduct. The narrow case of liability imposed by State Lands' interpretation of CERCLA's § 9607(a) and SARA's § 101(b)(1) immunizes the States from § 9607(a) suits when the States acquire the facility *voluntarily.* However, if the States acquire the facility *involuntarily* and cause or contribute to the hazardous waste problem, State Lands argues the States have no 11th Amendment protection. State's Reply to Wickland's Opposition, p. 5. Such a result rewards culpable behavior and thus offends the logic of the statute.

In Summary, the court rejects State Lands's assertion that Congress did not intend to abrogate the States' 11th Amendment protection when enacting CERCLA. Section 9607(a) provides an action by "persons" against the "State" or "a political subdivision of a State" for response costs expended in connection with a hazardous waste facility. See 42 U.S.C. §§ 9607(a), 9607(21). SARA provides the State with a narrow exception to § 9607(a) liability: the State must acquire a facility involuntarily and then not cause or contribute to the release or threatened release of hazardous substance. *See* SARA, Pub.L. No. 99–499, § 101(b)(1) (1986), 42 U.S.C. § 9607(a). Note, State Lands does not allege it acquired the Selby site involuntarily.

■ Therefore, the court denies State Lands' motions to dismiss plaintiff's and Asarco's federal claims. In particular, the court finds that the 11th Amendment does not bar plaintiff's First Cause of Action for response costs under § 9607(a). As for plaintiff's Second Cause of Action, CERCLA provides for declaratory relief. *See Wickland Oil Terminals v. Asarco,* 792 F.2d 887, 893 (9th Cir.1986); SARA, Pub.L. No. 99–499, § 113(b) (1986). The Ninth Circuit has determined that plaintiff's claim is ripe for adjudication. *See Wickland Oil Terminals,* 792 F.2d at 893. As for Asarco's Cross-Claim, Asarco requests "contribution from State Lands ... pursuant to CERCLA, federal common law, state common law, and otherwise." Asarco's Cross-Claim, ¶ 8. CERCLA provides a right of contribution. *U.S. v. New Castle County,* 642 F.Supp. 1258, 1268 (D.Del.1986); SARA, Pub.L. No. 99–499, § 113(f)(1) (1986). The court finds that the 11th Amendment does not bar Asarco's Cross-Claim for contribution against State Lands.

### State Claims Against State Lands

Both plaintiff and Asarco allege claims against State Lands for indemnity. Since neither party has plead the existence of a contract, the court finds that the claims are for equitable indemnity. A claim for equitable indemnity sounds in tort. 4 B.E. Witkin, *Summary of California Law, Torts* 2348–49 (1974). California is immune from tort liability except as expressly provided by statute. Cal.Gov't Code § 815.

The California Tort Claims Act ("CTCA") sets out the procedures for tort actions against California. CTCA requires that all claims against the State, other than for personal injury or property damage, be filed with the State Board of Control within one year after the accrual of the cause of action. Cal.Gov't Code §§ 911.2, 915. Cal. Gov't Code § 901 establishes that a cause of action for equitable indemnity accrues when the "defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity ... against the public entity." Cal.Gov't Code § 901. Upon presentation of a claim, the State Board of Control has 45 days to reject or allow the claim. Cal.Gov't Code § 912.4.

**961**

Only when the State Board of Control has acted on the claim can the claimant bring a court action against the State. Cal.Gov't Code § 945.4.

Compliance with these claim procedures is a necessary precedent to any equitable indemnity claim against California. As the Ninth Circuit has stated in *Willis v. Reddin*, 418 F.2d 702 (9th Cir.1969),

> In California[,] statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are more that procedural requirements. They are elements of the plaintiff's cause of action and conditions precedent to the maintenance of the action.

*Id.*, at 704.

█ Regarding plaintiff's claim for indemnity against State Lands, plaintiff has not complied with the procedures set out under CTCA. Plaintiff filed its indemnity action against State Lands on October 23, 1986. Plaintiff's indemnity action against State Lands accrued when Asarco served plaintiff with its counterclaim on October 30, 1986. On January 6, 1987, plaintiff presented its claim for indemnity to the State Board of Control. Memorandum of Wickland Oil Terminals in Opposition to State's Motion to Dismiss, Ex. E. The State Board of Control has until February 20, 1987 to reject or allow plaintiff's claim. Only when the State Board of Control has rejected plaintiff's claim can plaintiff bring a court action against the State. *See* Cal. Gov't Code § 945.4.

Therefore, plaintiff's claim for indemnity against State Lands is premature. The court dismisses plaintiff's Third Cause of Action for indemnity against State Lands without prejudice. The court grants plaintiff leave to amend its complaint to include an indemnity claim against State Lands after the State Board of Control takes final action on plaintiff's claim.

█ Regarding Asarco's claim for indemnity against State Lands, Asarco also has failed to comply with the procedures set out in CTCA. On January 23, 1984, plaintiff served Asarco its First Amended Complaint seeking recovery of damages against Asarco. Thus, Asarco's indemnity claim against State Lands accrued on January 23, 1984. *See* Cal.Gov't Code § 901. Under CTCA, Asarco had one year to file its claim with the State Board of Control. Asarco failed to file its claim within that limitations period. Declaration of Gerald L. Jones; Affidavit of Kevin G. McCurdy, Ex. 1. Since compliance with the CTCA is a condition precedent to any indemnity claim against California, the court dismisses Asarco equitable indemnity claim against State Lands with prejudice.

Asarco asks the court to toll the limitations period for filing claims with the State Board of Control. The court finds that the facts do not merit equitable tolling.

In accordance with the foregoing, it is hereby order that:

(1) State Lands' motion to dismiss plaintiff's First and Second Causes of Action for CERCLA response costs and declaratory relief is denied;

(2) State Lands' motion to dismiss plaintiff's Third Cause of Action for indemnity against State Lands is granted without prejudice;

(3) plaintiff is granted leave to amend its complaint to include an indemnity claim against State Lands after the State Board of Control takes final action on plaintiff's claim;

(4) State Lands' motion to dismiss Asarco's Cross-Claim for contribution under CERCLA is denied; and,

(5) State Lands' motion to dismiss Asarco's Cross-Claim for equitable indemnity is granted with prejudice.