CON–TECH SALES DEFINED
BENEFIT TRUST and
Synthes (U.S.A.)

v.

Gilbert G. COCKERHAM, et al.

Civ. A. No. 87–5137.

United States District Court,
E.D. Pennsylvania.

Oct. 18, 1988.

Robert W. Lentz, Lentz, Cantor, Kilgore & Massey, Paoli, Pa., Nicholas M. Kouletsis, Pepper Hamilton & Scheetz, Philadelphia, Pa., for Synthes.

John W. Wilmer, Jr., Brian Harrison, Vorys, Sater, Seymour and Pease, Washington, D.C., John C. McNamara, German, Gallagher & Murtagh, Philadelphia, Pa., for Nat. Rolling Mills, Inc.

William H. Mitman, Jr., West Chester, Pa., for Gilbert G. Cockerham and Virginia D. Cockerham, h/w; McCoy R. Cockerham and Betty J. Cockerham, h/w; McCoy R. Cockerham & Gilbert Cockerham t/a M & G Cockerham.

Richard H. Martin, Lawrence J. Bunis, Astor, Weiss & Newman, Philadelphia, Pa., for Hannig, Palitz, Hanning & Rudolph.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

I have before me MOTION OF THIRD PARTY DEFENDANT NATIONAL ROLLING MILLS, INCORPORATED, TO DISMISS THIRD PARTY COMPLAINT (filed May 26, 1988), and MOTION OF NATIONAL ROLLING MILLS, INCORPORATED, TO DISMISS PLAINTIFFS' AMENDMENT TO AMENDED COMPLAINT (filed August 16, 1988), and National Rolling Mills, Incorporated's memoranda in support of the motions. For the reasons given below, I am denying both motions to dismiss but will order Cockerhams to provide a more definite statement of their third-party complaint, and am allowing plaintiffs Con–Tech Sales Defined Benefit Trust and Synthes (U.S.A.) thirty (30) days to file amendments to their Amended Complaint.

In simplified form, the parties are as follows: Con–Tech Sales Defined Benefit Trust and Synthes (U.S.A.) (collectively "plaintiffs") are the purchasers of parcels of land near the intersection of Ship Road and Lincoln Highway in Exton, Pennsylvania (the "parcels"). Gilbert Cockerham and McCoy R. Cockerham, individually and trading as M & G Cockerham (collectively "Cockerhams"), operated a waste disposal

business and allegedly deposited hazardous wastes on the parcels. Richard T. Hannig and Louis R. Palitz, trading as Hannig and Rudolph ("Hannig and Rudolph"), sold the parcels to plaintiffs. National Rolling Mills, Incorporated ("NRM") is the alleged generator of the allegedly hazardous waste, and contracted with the Cockerhams for the disposal of that waste. The Pennsylvania Department of Environmental Resources ("DER"), not a party to this action, is the agency of the Commonwealth of Pennsylvania responsible for dealing with hazardous waste.

Again in simplified form, the history of this action is as follows: On May 15, 1986, the plaintiffs purchased the parcels from Hannig and Rudolph, with the intention of constructing office buildings. During excavation, the allegedly hazardous wastes were discovered and DER was notified. After inspection and analysis, DER directed removal of the contaminated soil. This has been done at an alleged cost, as of March 10, 1988, of $1,600,000. These are the alleged "Response Costs". In addition, plaintiffs have suffered unspecified consequential damages.

The essential procedural history of this action is as follows: On August 18, 1987, plaintiffs filed a complaint against Cockerhams and Hannig and Rudolph. On October 5, 1987, Cockerhams filed a motion to dismiss and for a more definite statement. On October 29, 1987, Hannig and Rudolph filed motions to dismiss and for a more definite statement. On December 12, 1987, Cockerhams withdrew their motion for a more definite statement. On February 22, 1988, I denied both motions to dismiss and the remaining motion for a more definite statement, but granted leave to amend the complaint. On March 10, 1988, an Amended Complaint was filed. On March 31, 1988, Hannig and Rudolph answered the amended complaint and filed a cross-claim against Cockerhams. On April 5, 1988, Cockerhams answered the complaint and filed a counter-claim against plaintiffs and a third-party complaint against NRM. On April 18, 1988, plaintiffs replied to Cockerhams' counter-claim. On April 25, 1988, Cockerhams answered Hannig and Ru-

dolph's cross-claim and filed a cross-claim against Hannig and Rudolph seeking indemnification or contribution. This cross-claim has not been answered. On May 26, 1988, NRM filed a motion to dismiss Cockerhams' third-party complaint; this was answered by Cockerhams on June 7, 1988. The active motions before me are NRM's motions to dismiss Cockerhams' third-party complaint and plaintiffs' amended complaint.

Plaintiffs have made claims against all defendants under the federal Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), the Pennsylvania Solid Waste Management Act, 35 P.S. § 6018.101 *et seq.* (West Supp.1988) ("SWMA"), and Pennsylvania common law under theories of negligence, public nuisance and civil conspiracy. In addition, they brought a common law complaint against Hannig and Rudolph for failure to disclose a latent defect. Cockerhams' third-party complaint against NRM alleges misrepresentation of the nature of the waste consigned to Cockerhams by NRM.

The issues before me are whether Cockerhams, in their third-party complaint, and plaintiffs, in their amendment to amended complaint, have alleged causes of action on which relief may be granted. Fed.R.Civ.P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(f) provides that "All pleadings shall be so construed as to do substantial justice." Under Fed.R.Civ.P. 12(b)(6), "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibbon,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

◼ NRM has moved to dismiss Cockerhams' third-party complaint on the grounds that it is barred by the Statute of Limitations and that, being based on fraudulent misrepresentations, it fails to plead fraud with the particularity required by Fed.R. Civ.P. 9(b). The two issues are inter relat-

ed because the particularity required to satisfy Rule 9(b) might also satisfy the requirements for tolling the Statute of Limitations.

In their third-party complaint against NRM, Cockerhams allege that throughout the period of their contractual relationship, from the mid 1960's until January, 1979, employees of NRM assured them that the wastes were "treated", "perfectly safe" and "non-hazardous". They further allege that they relied on these representations, and that NRM was the only possible source for hazardous wastes they may have dumped on the parcels. These allegations sound as a claim for misrepresentation under Pennsylvania common law, although the complaint does not say so. There is also an implied claim for indemnification under CERCLA, but that claim is not stated nor is the plaintiffs' amended complaint explicitly incorporated by reference.

In order to state a claim for fraud, the allegation must comply with Fed.R.Civ.P. 9(b), which says:

> **"(b) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Among the things not alleged are the names, or even the positions of the NRM employees who made the alleged misrepresentations, how and when Cockerhams discovered the misrepresentations or any effort by Cockerhams to protect against misrepresentation.

The when and how of discovery of misrepresentation is crucial to Cockerhams' case because the third-party complaint was filed some nine years and four months after the last alleged misrepresentation, three years and four months beyond the applicable Statute of Limitations, 42 Pa. Con.Stat.Ann. § 5527, *A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330, 332 (3d Cir.1986).

Under Pennsylvania law, as stated in *Bickell v. Stein*, 291 Pa.Super. 145, 149–50, 435 A.2d 610, 612 (1980):

> "... as a general rule the start of the statutory limitation on an action in tort may be delayed by plaintiff's ignorance of his injury and its cause, until such time as he could or should have discovered it by the exercise of reasonable diligence. *Lewey v. Fricke Coke Co.*, 166 Pa. 536, 31 A. 261 (1895); *Anthony v. Koppers Co., Inc.*, 284 Pa.Super. 81, 425 A.2d 428, 431–35 (1981) (and cases cited therein); *Gee v. CBS, Inc.*, 471 F.Supp. 600, 617 (E.D.Pa., 1979).
> The plaintiff has the burden of justifying any delay beyond the date on which the limitation would have expired if computed from the date on which the acts giving rise to the cause of action allegedly occurred. He must allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action sooner than he did. *Patton v. Commonwealth Trust Co.*, 276 Pa. 95, 99, 119 A. 834 (1923)."

NRM has prayed for the alternative remedies of dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or a more definite statement under Fed.R.Civ.P. 12(e). Since, upon review of the record in this matter, I am convinced that Cockerhams may have bases to state a better case than they have done so far, I will grant the latter and allow Cockerhams thirty (30) days to file a more definite statement of their third-party complaint.

NRM has moved to dismiss the amendment to the amended complaint on the grounds that: (1) There is no cause of action under CERCLA because there has been no release or threatened release of a hazardous substance *from* a facility (NRM's emphasis); (2) plaintiffs have no cause of action under SWMA because there is no private cause of action under SWMA and there is no recovery under SWMA against a generator of hazardous waste who does not also dispose of it; and (3) plaintiffs have not sufficiently alleged a common law cause of action for negligence, public nuisance or conspiracy.

NRM, paraphrasing *Artesian Water Co. v. Government of New Castle County*, 659

F.Supp. 1269, 1278 (D.Del.1987), *aff'd* 851 F.2d 643 (3d Cir.1988, as amended July 28, 1988), gives the following elements for a CERCLA claim by an individual claimant under § 9607 (NRM memorandum, page 7):

"1. NRM arranged for the transport or disposal of hazardous substances;

2. NRM's hazardous substances were disposed of at a 'facility';

3. There was a release or threatened release of the substances *from* the facility;

4. The release caused Plaintiffs to incur 'response costs';

5. Plaintiffs' response costs are necessary; and

6. Plaintiffs' response costs are consistent with the National Contingency Plan."

I will discuss these elements *seriatim.*

1. NRM concedes, and I agree, that plaintiffs allege that NRM contracted with Cockerhams for hauling and disposing of septic and industrial wastes for a period beginning in the mid–1960's and ending January, 1979. They further allege that these wastes contained hazardous substances and that they were disposed of on the parcels.

■ 2. The plaintiffs allege that the hazardous materials were dumped into trenches on the parcels, and that the trenches were covered over, without proper containment, to conceal the hazardous substances.

In 42 U.S.C. § 9601(9):

"The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel."

The parcels, as allegedly used by the Cockerhams, clearly meet this definition of a "facility".

3. NRM contends that the amended complaint is fatally defective because of plaintiffs' failure to allege a " 'release or a threatened release' of a 'hazardous substance' 'from' a 'facility'." NRM Memorandum, pp. 7, 8. Paragraph 37 in the amended complaint states:

"37. The dumping and disposal of the trench wastes on Lots 10, 11 and 28 was a 'release or threatened release' as defined at 42 U.S.C. § 9601(22) of hazardous substances."

To meet the contentions of NRM, that paragraph should read to the following effect:

"37. The dumping and disposal of the trench wastes on Lots 10, 11 and 28 was a 'release, or a threatened release which caused the incurrence of response costs, of a hazardous substance' from a 'facility' within the meaning of 42 U.S.C. §§ 9601(9) and (22) and §§ 9607(a)(3) and (4)."

In order to determine whether plaintiffs have made the required allegations, I must look at the entire complaint in the light of Fed.R.Civ.P. 8(a)(2) and 8(f), discussed *supra.* The amended complaint contains, among others, the following paragraphs:

"18. During 1972, and for some time thereafter, Cockerham dumped into trenches it dug on Lots 10, 11 and 28 certain wastes containing, *inter alia,* grease and oil, cyanide and cyanide compounds, plating wastes, as well as other toxic substances. The material dumped into the trenches shall hereinafter be referred to 'trench wastes'.

. . . . .

21. Cockerham caused these same trenches to be filled in and covered over, without proper containment, to secret and conceal the trench wastes.

. . . . .

26. During excavation, in preparation for construction on the lots, the trench wastes were discovered, and the Pennsylvania Department of Environmental Resources ("DER") was notified.

27. After inspection and analysis by Plaintiff, the DER directed removal of all

parts of Lots 11 and 28 that had been contaminated by the trench wastes.

. . . . .

29. At great expense, Con–Tech and Synthes, under DER supervision, began removal and proper transport of the contaminated parts of Lots 11 and 28 to an EPA licensed facility.

. . . . .

31. Throughout the removal procedure, Plaintiffs acted under the direct supervision of the DER.

. . . . .

35. The trench wastes include cyanide, cyanide compounds and plating solutions which are 'hazardous substances' as defined by CERCLA 42 U.S.C. § 9601(14).

36. Lots 10, 11 and 28 are a 'facility' as defined by CERCLA, 42 U.S. § 9601(9).

37. The dumping and disposal of the trench wastes on Lots 10, 11 and 28 was a 'release or threatened release' as defined at 42 U.S.C. § 9601(22), of hazardous substances.

38. As a result of the release and threatened release of hazardous substances on Lots 10, 11 and 28, the Plaintiffs have incurred 'response' costs, as defined at 42 U.S.C. § 9601(25) which include the costs of 'removal' as defined at 42 U.S.C. § 9601(23), and Plaintiffs may incur additional response costs."

■ In these paragraphs, plaintiffs allege the dumping of hazardous materials at a facility, and that the hazardous materials were without proper containment. For the purpose of a motion to dismiss, I will accept DER's order to remove the contamination as being DER's determination that there was a threatened release from the facility. I take judicial notice that in a typical year over forty inches of precipitation fall in Southeastern Pennsylvania according to *The National Atlas of the United States of America*, p. 96, United States Department of the Interior, Washington, D.C., 1970. The potential for such precipitation to cause leaching of contaminants into ground water is obvious.

NRM cites two cases for the proposition that the mere presence of hazardous

wastes at a facility is insufficient to justify private response costs, *U.S. v. Wade*, 577 F.Supp. 1326 (E.D.Pa.1983) and *Artesian Water Co. v. Government of New Castle County, supra.*

In *Wade*, on defendants' motion for summary judgment, the issue regarding release or threatened release from a facility was one of sufficiency of *proof,* not sufficiency of *allegation.* The court found a sufficient issue of fact to justify trial. In note 6, page 1334, Judge Newcomer said:

"6. The second argument, that mere dumping constitutes a release, need not be addressed at this stage since I have concluded that the government has not yet established this fact with respect to these defendants; however, I am uninclined to accept this position because it would lead to the conclusion that any disposal of hazardous waste would create potential CERCLA liability...."

■ I agree with Judge Newcomer that mere dumping, with nothing else, is not a sufficient allegation. But in the instant case, we have more than that. Here we have concealed dumping, without proper containment, under circumstances where leaching into groundwater is possible and, very important to the issue of threatened release from the facility, we have a DER order for corrective action.

In *Artesian*, on plaintiff's motion for summary judgment, the issue was whether plaintiff had to "fingerprint" particular contaminants as coming from defendant's landfill site. The existence of contaminants in groundwater down-stream from the site was not questioned, the only question was the source, as between defendant's site and another landfill. Finding, in 659 F.Supp. at 1281, that the defendant's landfill by definition, was a "facility" under § 9601(9)(A), the court found plaintiff's evidence of "release" sufficient to sustain summary judgment. The district court allowed recovery of monitoring costs, finding they were "response" costs. On appeal, the plaintiff sought reversal of the district court's ruling that denied its claim for damages for loss of potential withdrawals of

groundwater. At the time the plaintiff was drawing 2,000,000 gallons a day for sale to customers, while the defendant was drawing another 2,000,000 a day as a pollution abatement measure. The court found that the plaintiffs had never been licensed to draw more than 2,000,000 gallons, and therefore, the additional water was a natural resource and the property of the state not the plaintiffs. Since the additional water was the property of the state, only the state would have a cause of action for its damage pursuant to 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f).

In both of these cases, the issue regarding "release" was on a motion for summary judgment, and the question involved the source of the release, not whether there was a release.

There is another line of cases where the factual situation is closer to the instant case. In these cases, each of the plaintiffs had purchased land, discovered the presence of hazardous materials and were ordered by state or local authorities to incur response costs. In each of these cases, recovery of response costs was allowed. See *Cadillac Fairview/California v. Dow Chemical Co.*, 840 F.2d 691 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887 (9th Cir.1986); *N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896 (9th Cir.1986) and *Interchange Office Park v. Standard Indus., Inc.*, 654 F.Supp. 166 (W.D.Tex.1987). In *Interchange*, the court said, at 169:

"*Necessity of Release*
Defendants next argue that plaintiff's complaint is defective for alleging only the deposit of hazardous waste, and not the release of hazardous waste. As previously defined, 'removal' and 'remedial action' are appropriate in response to the release or threatened release of a hazardous substance. 'Release' is defined in CERCLA as any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment. Title 42 U.S.C. Section 9601(22). In their first amended complaint, plaintiffs allege that defendants deposited,

dumped and disposed of lead on the site in question. The Court finds plaintiffs have adequately alleged that defendants released lead into the environment."

Based on the foregoing, I find that the plaintiffs have alleged a "release or threatened release" of hazardous materials from a facility within the meaning of 42 U.S.C. § 9607(a)(4) with sufficient particularity to survive a motion to dismiss. In order to better focus the issues and comfort the parties, I will allow plaintiffs thirty (30) days to file amendments to their amended complaint consistent with this memorandum.

4. & 5. Regarding the requirement that plaintiffs must allege the incurring of "necessary" "response costs", plaintiffs have alleged in paragraphs 32, 33 and 38 of the amended complaint and Count VIII of the amendment to amended complaint that they incurred "response costs". They have also alleged in paragraphs 26, 27 and 29 of the amended complaint that DER ordered them to dispose of the contamination. While plaintiffs have not used the word "necessary" to modify "response costs", a plain reading of these allegations is that plaintiffs have incurred necessary response costs. NRM in its memorandum argues forcefully that plaintiffs cannot recover damages in addition to response costs under CERCLA. This is moot because plaintiffs' prayer for relief under CERCLA is for "costs of the response and removal actions already incurred ... [and] costs of the response and removal actions, not inconsistent with the National Pollution Contingency Plan, to be incurred by plaintiffs." Amendment to Amended Complaint, p. 2. There is no prayer for CERCLA damages in excess of response or removal costs. Whether plaintiff has actually incurred necessary response costs, their necessity and their amount cannot and need not be determined on a motion to dismiss.

6. With regard to plaintiffs' compliance with the National Contingency Plan, they allege, in paragraph 39 of the Amended Complaint, that they have complied. Like the incurring of necessary response costs, this is an issue that cannot and need not be

**1256**

determined on a motion to dismiss. These issues must await a more complete development of the record. *City of Philadelphia v. Stephan Chemical Company,* 544 F.Supp. 1135, 1144 (E.D.Pa.1982).

For the reasons given above, I find that plaintiffs have stated a sufficient cause of action against NRM under CERCLA. Since this is not a diversity case, that claim is essential to retaining federal jurisdiction over the pendent state claims. These claims involve the same factual basis as the CERCLA claim, and no undue prejudice to NRM will result from failure to dismiss those claims at this stage in the proceedings. Consequently, I will deny NRM's Motion to Dismiss the Amendment to the Amended Complaint without discussion of the pendent claims.