POWELL DUFFRYN TERMINALS,
INC., an Illinois corporation,
Plaintiff,

v.

CJR PROCESSING, INC., an Illinois corporation; Curtis Appel; Effluent Technology, Inc., a Wisconsin corporation; Louis Filosa; and Amber Oils, Inc., a Wisconsin corporation, Defendants.

No. 92 C 5348.

United States District Court,
N.D. Illinois, E.D.

Nov. 30, 1992.

J. Timothy Ramsey, Rudnick & Wolfe, Don E. Glickman, Don E. Glickman, Ltd., Chicago, IL, for plaintiff.

Martin Norman Preiser, River Forest, IL, for defendant.

Curtis Appel, pro se.

Effluent Technology, Inc., pro se.

Louis Filosa, pro se.

## ORDER

NORGLE, District Judge.

Before the court are the motions of defendants CJR Processing, Inc. ("CJR") and Curtis H. Appel ("Appel") to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. For reasons that follow, the court grants the motions pursuant to Rule 12(b)(6) as to Count I, without prejudice, and grants plaintiff Powell Duffryn Terminals, Inc. ("Powell Duffryn") leave to file an amended complaint consistent with this opinion within ten days. The court defers ruling on the remaining motions.

## FACTS

The complaint establishes that Powell Duffryn owns and operates a public storage tank facility for the storage of various liquids. CJR leased two tanks and stored 1,135,383 gallons of a liquid mixture of ethylene glycol, lube oil, and water. Appel is the president of CJR and allegedly directed the operations of CJR.

On November 13, 1991, CJR shipped approximately 920,000 gallons of the liquid solution from the storage tanks. Shortly after the shipment, the Illinois Environmental Protection Agency ("IEPA") informed Powell Duffryn that the liquid solution in both of CJR's leased tanks contained elevated concentrations of carbon tetrachloride and other substances causing the entire content of the tanks to be classified as hazardous waste under federal and state environmental laws. Powell Duffryn claims that it was never informed prior to November 13, 1991 that the liquid stored at the facility contained hazardous substances.

At the request of the IEPA, Powell Duffryn took samples of the stored solution and sent them to various laboratories for analysis. Every test result confirmed that the tanks contained concentrations of hazardous substances. The IEPA then directed Powell Duffryn to remove the solution in CJR's tanks by February 23, 1992 lest it take legal action against Powell Duffryn for violation of the Illinois Environmental Protection Act. On November 27, 1991, Powell Duffryn terminated the lease agreement with CJR and demanded CJR to remove and dispose of the remaining liquid in the tanks in accordance with the applicable environmental laws.

On January 22, 1992 Powell Duffryn and CJR entered into a settlement agreement which provided that Powell Duffryn would remove and dispose of the liquid and would pay the appropriate costs and expenses, and provided that CJR would pay tank rental fees through December 31, 1991 and would reimburse Powell Duffryn for all of the costs and expenses in connection with the removal, transportation, and disposal of the liquid. The agreement further provided that CJR would make monthly payments to Powell Duffryn in the amount of $20,000 until all amounts were paid.

Powell Duffryn engaged the services of environmental consulting firms to remove and dispose of the liquid solution and incurred various expenses. This was done successfully and in conformance with all relevant regulations and requirements. Powell Duffryn's total cost and expense in connection with this project amounted to $393,911.28. CJR paid four monthly installments totalling $80,000, but then refused to make any further payments.

Powell Duffryn filed suit under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* to recover its costs in removing the contaminated liquid materials from the tanks CJR leased. Powell Duffryn also raises claims based on common law theories of breach of contract, fraud, and piercing the corporate veil, asserting jurisdiction over these claims based on this court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

CJR and Appel contend that the court should dismiss Count I of Powell Duffryn's complaint because it fails to state a CERCLA claim. Consequently, they assert that the pendent state law claims should also be dismissed once the federal claim is dismissed because the court's continuing juris-

diction over those counts depends on the CERCLA claim. Last, CJR and Appel request the court to dismiss Count II for failure to plead fraud with particularity.

## DISCUSSION

■ On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true, *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991), as well as all reasonable inferences drawn from those allegations, *Nelson v. Monroe Regional Medical Center*, 925 F.2d 1555, 1558 (7th Cir.1991). Because federal courts simply require "notice pleading," a complaint need not specify the correct legal theory nor point to the right statute to survive a motion to dismiss. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134–35 (7th Cir.1992) (citing *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992)). A party need only "outline or adumbrate" a violation of a statute. *Brownlee v. Conine*, 957 F.2d 353 (7th Cir.1992). The court must construe the pleadings liberally,[1] and mere vagueness or lack of detail alone does not constitute sufficient grounds to dismiss a complaint. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Accordingly, a party fails to state a claim upon which relief may be granted only if that party can prove no set of facts upon which to grant legal relief. *Ross v. Creighton Univ.*, 957 F.2d 410, 413 (7th Cir.1992).

■ To state a claim under 42 U.S.C. § 9607(a), Powell Duffryn must allege that CJR and Appel are responsible for a release or threatened release of a hazardous substance from a facility and caused Powell Duffryn to incur response costs. 42 U.S.C. § 9607; *U.S. Steel Supply, Inc. v. Alco Standard Corp.*, No. 89 C 20241, 1992 WL 229252, at *6, 1992 U.S.Dist. LEXIS 13722, at *17 (N.D.Ill. Sept. 9, 1992); *Amcast Indus. Corp. v. Detrex Corp.*, 779 F.Supp. 1519, 1534–35 (N.D.Ind.1991). Although CERCLA defines a release as "any

spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment," 42 U.S.C. § 9601(22), the court possesses little guidance regarding what constitutes a "threatened" release. CERCLA simply fails to define that term.

So the question is, just how certain must a court be that a spill, leak, discharge, or escape will occur to find that a threat exists? Powell Duffryn's allegation as to a threatened release of hazardous material reads as follows:

> There was a threatened release of the liquid solution into the environment in that it was not properly labeled or identified as hazardous. Powell Duffryn does not treat, store or dispose of hazardous substances and is not equipped to do so, and, until mid-November 1991, the liquid solution was not handled or labeled in a manner appropriate for hazardous substances.

CJR and Appel contend that this allegation fails to properly allege a threatened release of a hazardous substance. They further assert that the complaint merely establishes that the expenses incurred were for the avoidance of legal and financial risks emanating from the IEPA and not because of an actual or threatened release of hazardous materials into the environment. Essentially, they claim that the removal of the contaminated liquid from the tanks under the circumstances alleged is distinguishable from a removal to prevent a threatened release.

The court agrees. Powell Duffryn's complaint does not sufficiently allege a CERCLA claim. Nowhere is there an allegation that the liquid solution stored in the tanks was capable of escaping into the environment. Powell Duffryn has not alleged that the liquid was contained in improper or unsuitable containers or that the storage tanks were corroded, cracked, unsealed, unenclosed, or otherwise exposing the environment to the probability that the

---

1. Federal court pleading standards are so lenient that, on appeal, the Seventh Circuit will allow the appellant to present facts which were not in the district court record—or an "unsubstantiated version of the events"—to demonstrate that the district court should not have dismissed the complaint. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992).

mixture would escape. *Cf. Fertilizer Inst. v. United States Envtl. Protection Agency*, 935 F.2d 1303, 1309–10 (D.C.Cir.1991) (exposure of substance to environment such that it may be allowed to escape into air is not a release of hazardous substance, although it may be a threatened release). The complaint does not establish that immediate short-term action was necessitated by the presence of the liquid in the storage tanks on Powell Duffryn's premises. *See Carlyle Piermont Corp. v. Federal Paper Bd. Co.*, 742 F.Supp. 814, 819–20 (S.D.N.Y. 1990) (discussing factors to determine when removal action is necessary under 40 C.F.R. § 300.65(b)(2) (1989)).

The court further finds that the case law supports this conclusion. Powell Duffryn, in response to the motion, points to a Ninth Circuit opinion stating that response costs under CERCLA can include the costs of investigation or testing for the presence of hazardous wastes and one can conceivably recover for these costs even before the potential means of release have been identified. *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1153 (9th Cir.1989). Nonetheless, the Ninth Circuit merely held that a complaint need not contain a specific allegation of the manner in which a threatened release has occurred. *Id.* By contrast, Powell Duffryn specifically alleged the manner in which it claims a threatened release has occurred, and it is that allegation which the court finds legally insufficient. Furthermore, the case *Ascon* cited in support of its position, *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887 (9th Cir.1986), merely discussed what constitutes "costs in response" to a release or threatened release and not what constitutes a threatened release. Also, in *Wickland* the California Department of Health Services had informed the plaintiff that the substances deposited on and below the surface of its property constituted a potentially serious environmental hazard, thus the threat of a release from the uncovered substance was more imminent. *Id.* at 889.

■ Powell Duffryn cites *Con–Tech Sales Defined Benefit Trust v. Cockerham*, 698 F.Supp. 1249 (E.D.Pa.1988) to support its position that a state environmental agency's order requiring removal of contaminants constitutes a finding of a threat of release. But contrary to the facts in this case, the hazardous wastes in *Con–Tech* were dumped without proper containment and under circumstances justifying the court to find that leaching into groundwater was possible. *Id.* at 1254. Powell Duffryn also cites *United States v. Northernaire Plating Co.*, 670 F.Supp. 742 (W.D.Mich.1987), *aff'd, United States v. R.W. Meyer, Inc.*, 889 F.2d 1497 (6th Cir. 1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990) to no avail. In that case, hazardous substances were actually found in the soil. *Id.* at 746. Further, the state agencies' reports indicated that the facility was abandoned and in a state of "extreme disarray," and the facts showed that no one was willing to take responsibility for ensuring the materials were stored properly. *Id.* at 747. These, or similar, factors are not present in Powell Duffryn's complaint. Last, the parties cite *State of New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985) to support their respective positions. The *Shore Realty Corp.*, however, based its finding of a threatened release on the corroding and deteriorating tanks, in conjunction with the defendant's lack of expertise and lack of a license. *Id.* at 1045. Accordingly, the case law demonstrates that more than inexperience and an absence of a license are required to find that a threatened release has occurred.

■ Notwithstanding the above discussion, the court perceives an inference that it may reasonably draw in favor of Powell Duffryn to justify only a dismissal without prejudice. It is conceivable that Powell Duffryn could prove some set of facts upon which this court could grant legal relief. The complaint states simply that the storage tanks were ill-equipped to hold the particular hazardous substances. Although the complaint is silent as to the manner in which the tanks were ill-equipped, and the condition of the storage tanks is not evident, it is conceivable that corrosion or leakage may have been imminent and that a release of the material would have a substantial impact on the

environment. For instance, the tanks may not have been suitable for containing the particular chemicals stored therein without creating a danger of leakage. Further, Powell Duffryn's allegation that the liquid was not handled in a manner appropriate for hazardous substances is ambiguous enough to create an impression that the allegation refers to the possibility that the mislabeling of the liquid caused the liquid to be transported and stored dangerously, and does not refer merely to the mislabeling itself. These allegations are enough to create a possibility that the facts may demonstrate a threatened release occurred.

The court can also draw a limited inference favorable to Powell Duffryn because of the IEPA's reaction in this matter. The settlement agreement attached as an exhibit to the complaint demonstrates that the IEPA determined that, if the hazardous substance was not removed, it would consider the two tanks to constitute a treatment, storage, and disposal facility. Not only would the IEPA consequently cite Powell Duffryn for illegal operation of such a facility without a permit and impose fines, but the IEPA indicated that it would close the operation of the tanks if the liquid remained. It is therefore conceivable that the IEPA was under the impression that the continuing presence of the hazardous waste in the storage tanks would pose some threat to the environment. But this inference is mere conjecture. The complaint does not allege the reasons the IEPA would close the tanks and it is unclear what the IEPA did indeed believe. If Powell Duffryn can allege and establish that the IEPA was propelled to act out of fear that the hazardous substances would soon be released into the environment, the claim could move forward.

The inferences this court draws in favor of Powell Duffryn are not inescapable conclusions. The allegations are vague enough to cause the court to formulate hypothetical situations which could justify a judgment in favor of Powell Duffryn. In this situation the court will only dismiss the claim without prejudice to allow Powell Duffryn the chance to demonstrate whether this speculation is justified. But to illustrate why these inferences are limited, the court offers the following hypothetical. If the issue were whether an individual may pose a danger on the public highways, and the only evidence to support the allegation is that the individual in question does not possess a driver's license and is unfamiliar with the area, a case would not be made that he is a dangerous driver. On the other hand, scrutiny of the underlying reasons for the absence of a license may reveal whether the individual is dangerous or not. For instance, if Mario Andretti (perhaps the greatest race-car driver of all time) did not possess a driver's license merely because he failed to pay a license fee, the court would not conclude he was a dangerous driver. But if an individual did not possess a driver's license because he was legally blind, there is no hesitation in concluding that person may pose a danger. In all, the court is left with this: Powell Duffryn alleges there was a threat of a release supported only by the lack of a permit for hazardous substances and its unfamiliarity with handling these substances. Yes, the IEPA would close the tanks down if the liquid remained, but for what reason? The court will not infer a threat from the allegations as presently pleaded. Accordingly, Count I is dismissed without prejudice.

In sum, if the issue of the existence of a threatened release is resolved solely on whether Powell Duffryn was ill-equipped to handle hazardous waste, unknowingly received the waste, and failed to take necessary handling precautions, the court holds that a threat of release has not occurred. If, on the other hand, Powell Duffryn can amend its complaint in good faith and in accordance with Rule 11 of the Federal Rules of Civil Procedure to establish facts tending to show a concrete threat of a release, it is hereby granted leave to do so within ten days. Nonetheless, if an amended complaint is not filed within ten days, the dismissal will be with prejudice and the entire case will be further disposed of in light of the following discussion.

The court will decline to exercise jurisdiction over the other claims in Powell Duf-

fryn's complaint if the CERCLA claim is dismissed with prejudice. Although these claims are so related to the CERCLA count such that they form part of the same case or controversy under Article III, *see* 28 U.S.C. § 1367(a), a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction," *see id.* at § 1367(c)(3). Accordingly, if in ten days an amended complaint is not filed consistent with this opinion, the court will issue an order granting CJR's and Appel's motions to dismiss for lack of subject matter jurisdiction.

The court will defer ruling on whether Powell Duffryn has alleged fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure until an amended complaint is filed, if one is filed.

### CONCLUSION

For the above stated reasons, the court dismisses Count I of Powell Duffryn's complaint without prejudice for failure to state a claim under CERCLA. The court grants Powell Duffryn leave to file an amended complaint consistent with this court's opinion within ten days, if it can do so in good faith and in accordance with Fed.R.Civ.P. 11. The court defers ruling on whether Powell Duffryn has alleged fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9(b) until an amended complaint is filed, if one is filed. If, within ten days, an amended complaint is not filed, the court will dismiss Count I with prejudice for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), will dismiss the entire action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction over the remaining allegations, and will deny the Rule 9(b) motion as moot.

IT IS SO ORDERED.